### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 09 B 04820 |
| | ) | Chapter 7 |
| STUART M. HANSON, d/b/a | ) | Judge John H. Squires |
| HANSON & WHITE, LLC, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| ———————————————— | ) | |
| | ) | |
| 6050 GRANT, LLC, | ) | Adversary No. 09 A 00447 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STUART M. HANSON, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

This matter comes before the Court on the motion of Stuart M. Hanson (the "Debtor") to alter or amend this Court's Memorandum Opinion entered on May 10, 2010. For the reasons set forth herein, the Court denies the motion.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.  It is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (I), and (O).

-2-

## II. FACTS AND BACKGROUND

All of the relevant facts and background are contained in the Court's Memorandum Opinion dated May 10, 2010 (the "Opinion"). *6050 Grant, LLC v. Hanson (In re Hanson)*, 428 B.R. 475 (Bankr. N.D. Ill. 2010). Therein, the Court found that a debt in the sum of $93,461.29 owed by the Debtor to 6050 Grant, LLC ("6050 Grant") was nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). On May 24, 2010, two weeks after entry of the Opinion, the Debtor filed the instant motion to alter or amend. 6050 Grant opposes the motion.

## III. APPLICABLE STANDARD

Rule 59(e) of the Federal Rules of Civil Procedure, as adopted by Bankruptcy Rule 9023, permits a party to move the court to alter or amend a judgment. Fed. R. Civ. P. 59(e). Rule 59(e) motions serve a narrow purpose and must clearly establish a manifest error of law or fact, newly discovered evidence, *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008); *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 512 (7th Cir. 2007), or an intervening change in the controlling law. *Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998). The decision to grant or deny a Rule 59(e) motion is within the court's discretion. *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996); *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995).

"The rule essentially enables a . . . court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). Indeed, the Rule permits

-3-

a party to bring to the attention of the court "factual and legal errors that may change the outcome so they can be corrected. It does not allow a party to introduce new evidence earlier available, or advance arguments that could and should have been presented prior to the judgment." *Herbstein v. Bruetman (In re Bruetman)*, 259 B.R. 672, 673-74 (Bankr. N.D. Ill.), *aff'd*, 266 B.R. 676 (N.D. Ill. 2001), *aff'd*, 32 Fed. Appx. 158 (7th Cir. 2002). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal quotation omitted).

The function of a motion to alter or amend a judgment is not to relitigate old matters or present the case under a new legal theory. *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996). Moreover, the purpose of such a motion "is not to give the moving party another 'bite of the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment." *Yorke v. Citibank, N.A. (In re BNT Terminals, Inc.)*, 125 B.R. 963, 977 (Bankr. N.D. Ill. 1990). The rulings of a bankruptcy court "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *See Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988). "A motion brought under Rule 59(e) is not a procedural folly to be filed by a losing party who simply disagrees with the decision; otherwise, the Court would be inundated with motions from dissatisfied litigants." *BNT Terminals*, 125 B.R. at 977.

-4-

## IV. <u>DISCUSSION</u>

The Debtor does not contend that there is any newly discovered evidence or an intervening change in the controlling law. Rather, he argues that the Court's Opinion contains manifest errors of law and fact, which, when rectified, require the entry of judgment in his favor. Specifically, the Debtor claims that the Court erred by basing its Opinion on events that occurred after July 2008, the time at which the debt at issue was incurred. According to the Debtor, those events cannot serve as a basis for nondischargeability under § 523(a)(2)(A). If the Court disregards all events after July 2008, as well as any testimony relating thereto, the Debtor says, there is no evidence to establish that he did not fully intend to use the money tendered by 6050 Grant to pay for the architectural work and other soft costs related to the building of the custom home.

The Court rejects the Debtor's argument and finds that he has failed to demonstrate a manifest error of law or fact. As the Court painstakingly explained in the Opinion, a false representation for purposes of § 523(a)(2)(A) is an express misrepresentation that can be demonstrated either by a spoken or written statement or through conduct. *New Austin Roosevelt Currency Exch., Inc. v. Sanchez (In re Sanchez)*, 277 B.R. 904, 908 (Bankr. N.D. Ill. 2002); *Bletnitsky v. Jairath (In re Jairath)*, 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001). In contrast, false pretenses include "implied misrepresentations or conduct intended to create and foster a false impression." *Mem'l Hosp. v. Sarama (In re Sarama)*, 192 B.R. 922, 927 (Bankr. N.D. Ill. 1996) (internal quotation omitted). "The key character of false pretenses" is "a series of events or communications which collectively create[s] a false or misleading set of circumstances [by] which the creditor is wrongfully induced by the debtor to transfer

-5-

property; it is multiple events done willfully, knowingly, and by design." *Kadlecek v. Ferguson (In re Ferguson)*, 222 B.R. 576, 586 (Bankr. N.D. Ill. 1998); *see also Sterna v. Paneras (In re Paneras)*, 195 B.R. 395, 406 (Bankr. N.D. Ill. 1996). Finally, "actual fraud" under the statutory exception encompasses a wide spectrum of circumstances and consists of "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another[.]" *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000) (internal quotation omitted) (also noting that "'[n]o definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated'").

At the heart of the exception to discharge under any of the prongs of § 523(a)(2)(A) is the element of intent. As the Debtor argues, intent to deceive is generally determined by the debtor's subjective intention at the inception of the debt. *CFC Wireforms, Inc. v. Monroe (In re Monroe)*, 304 B.R. 349, 356 (Bankr. N.D. Ill. 2004); *Sears, Roebuck & Co. v. Green (In re Green)*, 296 B.R. 173, 179 (Bankr. C.D. Ill. 2003).

It is well established, however, that courts can consider subsequent conduct as long as that conduct provides an indication of the debtor's state of mind at the time of the actionable representations. *Williamson v. Busconi*, 87 F.3d 602, 603 (1st Cir. 1996) (explaining that "subsequent conduct may reflect back to the promisor's state of mind and thus may be considered in ascertaining whether there was fraudulent intent at the time the promise was made") (internal quotation omitted); *Strominger v. Giquinto (In re Giquinto)*, 388 B.R. 152, 167 (Bankr. E.D. Pa. 2008) (stating that "[a]n often employed indicia, especially with respect to fraudulent actions under § 523(a)(2)(A), centers on a debtor's

-6-

subsequent conduct") (internal quotation omitted); *Siebanoller v. Rahrig (In re Rahrig)*, 373

B.R. 829, 834 (Bankr. N.D. Ohio 2007) (same); *Stein v. Tripp (In re Tripp)*, 357 B.R. 544,

548 (Bankr. D. Ariz. 2006) (noting that a court "may consider subsequent conduct to the

extent that it provides an insight into the debtor's state of mind at the time of the

representations"); *Mack v. Mills (In re Mills)*, 345 B.R. 598, 604-05 (Bankr. N.D. Ohio 2006)

(finding that "a debtor's subsequent conduct will often help to shed light on the debtor's state

of mind at the time of the transaction"); *Lucas v. Lyle (In re Lyle)*, 334 B.R. 324, 334 (Bankr.

D. Mass. 2005) (explaining that "subsequent conduct can reflect a debtor's state of mind at

the time the representation is made"); *Green*, 296 B.R. at 179 (noting that subsequent

inconsistent conduct is "admissible as circumstantial evidence of prior intent"); *Ferguson*,

222 B.R. at 586 (finding that "misrepresentations and [false] pretenses *after* construction

proved to be material in attempting to hide the reasons for defects in [the plaintiff's] home")

(emphasis added); *Visotsky v. Woolley (In re Woolley)*, 145 B.R. 830, 836 (Bankr. E.D. Va.

1991) (stating that "[s]ubsequent conduct may reflect back to the promisor's state of mind

and thus may be considered in ascertaining whether there was fraudulent intent"); *Miller v.*

*Krause (In re Krause)*, 114 B.R. 582, 606 (Bankr. N.D. Ind. 1988) (explaining that a debtor's

"*subsequent conduct may reflect his state of mind at the time he made the promise* and thus

be considered in determining whether he possessed the requisite fraudulent intent")

(emphasis in original).

Determining whether a debtor had the requisite intent under § 523(a)(2)(A) is,

therefore, a factual, subjective inquiry decided by examining all of the relevant

circumstances, including those that took place after the debt was incurred. *See Pearson v.*

-7-

*Howard (In re Howard)*, 339 B.R. 913, 919 (Bankr. N.D. Ill. 2006); *Green*, 296 B.R. at 179;

*Chase Manhattan Bank v. Murphy (In re Murphy)*, 190 B.R. 327, 333-34 (Bankr. N.D. Ill.

1995); *see also Williamson*, 87 F.3d at 603 (explaining that "proper application of the

'totality' test . . . often warrants consideration of post-transaction conduct and

consequences"). Because a debtor will rarely, if ever, admit to acting with an intent to

defraud, the scienter element may be inferred based on the totality of the circumstances.

*Hickory Point Bank & Trust, FSB v. Kucera (In re Kucera)*, 373 B.R. 878, 884 (Bankr. C.D.

Ill. 2007); *Ferguson*, 222 B.R. at 585; *Rezin v. Barr (In re Barr)*, 194 B.R. 1009, 1020

(Bankr. N.D. Ill. 1996). In ascertaining whether there was intent to deceive, a court may also

rely on a pattern of representations to infer intent. *Woolley*, 145 B.R. at 836. After all of the

evidence has been produced, the court must then determine whether the circumstances,

viewed in the aggregate, present "a picture of deceptive conduct" by the debtor, indicating

an intent to defraud the creditor. *See Cripe v. Mathis (In re Mathis)*, 360 B.R. 663, 666

(Bankr. C.D. Ill. 2006); *Shelby Shore Drugs, Inc. v. Sielschott (In re Sielschott)*, 332 B.R.

570, 572 (Bankr. C.D. Ill. 2005).

After an extensive and thorough re-examination of all of the pertinent facts in this

matter, the Court finds that the weight of the evidence supports the position articulated in its

Opinion that the Debtor engaged in a deliberate scheme to deceive, mislead, and wrongfully

induce 6050 Grant to transfer money to the Debtor's construction company.

Notwithstanding the Debtor's dubious contentions that the taking of a second finder's fee

was merely a bookkeeping error and that the amount of an architectural fee that was grossly

inflated on a customer statement issued in July was simply an estimate, the record is replete

-8-

with false representations, all of which the Court finds the Debtor made "willfully,

knowingly, and by design" in an effort to do whatever was necessary to cause 6050 Grant to

pay monies that were not owed.[1]  In addition to the documentary evidence and trial testimony

that bolster this conclusion, the Debtor's plan to defraud 6050 Grant can be inferred from the

fact that the Debtor's company was experiencing financial difficulty and that the Debtor was,

therefore, using 6050 Grant's monies to pay for debts and expenses unrelated to the

construction project in an effort to salvage his business.  The fact that the Debtor was facing

financial deterioration at the time he made the misrepresentations at issue is relevant to his

intent in this case.  *See Bernard Lumber Co. v. Patrick (In re Patrick)*, 265 B.R. 782, 787

(Bankr. N.D. Ohio 2001); *but see Mills*, 345 B.R. at 606 (noting that the practice of using

funds received from one project to pay for another, without more, does not establish that a

debtor acted with an intent to deceive).

Relying on *Levine v. Ward (In re Ward)*, 425 B.R. 507 (Bankr. E.D. Wis. 2010), the

Debtor argues that he acted at all times in furtherance of the goal of completing the

construction project and that these actions run contrary to the Court's finding that he

intended to defraud 6050 Grant.  In *Ward*, plaintiff home buyers gave $20,000 to the

principal of a construction company toward the cost of building a formal dining room and

installing windows.  *Id.* at 512.  Subsequently, the money was used for another purpose, and

the construction company decided not to move forward with the project.  *Id.* at 512-13.  The

plaintiffs then filed an adversary proceeding, claiming, in part, that the principal falsely

---

[1] The Court will not here reiterate the numerous misrepresentations made by the
Debtor, nor discuss the trial testimony related thereto.  All of the relevant facts were fully and
meticulously set forth in the Court's Opinion.  *See Hanson*, 428 B.R. at 479-85, 488-93.

-9-

represented that he was going to use the money for the home improvements and that, at the time he made the representation, he knew that he was going to keep the money. *Id.* at 516. The court found that representations to do future acts do not constitute "false representations" for purposes of § 523(a)(2)(A) unless the debtor never intended to perform. *Id.* Although the principal did not ultimately "build the dining room or install the windows," the court said, "he appears to have made efforts to do so." *Id.* at 517.

As the *Ward* court suggests, one way that misrepresentation or fraud can be established under § 523(a)(2)(A) in cases specifically involving contractor-debtors is to show that the contractor executed the contract never intending to comply with its terms. *Id.* at 516-17; *see also Scheidelman v. Henderson (In re Henderson)*, 423 B.R. 598, 622 (Bankr. N.D.N.Y. 2010). Courts have found that contractor-debtors "acting with intent to defraud will usually not undertake any significant measures toward the performance of their obligation." *Rahrig*, 373 B.R. at 834. Thus, as a general rule, the greater the extent of the debtor's performance, the less likely an intent to defraud. *Id.*; *Mills*, 345 B.R. at 605.

In the matter at bar, however, the false representations made by the Debtor were not based on future acts or promises, nor did they concern the Debtor's efforts to perform or complete the construction work. Rather, the numerous misrepresentations–that various architectural fees had been incurred, that payment of those fees was due, that expenses for architectural work and soft costs had been paid by the Debtor's construction company, that both a second finder's fee and a construction management fee were due–display a pattern of deceit by the Debtor to induce 6050 Grant to give–and continue to give–money to the Debtor's company. Thus, the Debtor's reliance on *Ward* is misplaced.

-10-

Finally, the Debtor asks the Court to alter or amend its Opinion by invoking two fundamental principles of bankruptcy law involving the construction of exceptions to discharge and the "fresh start" purpose of the Bankruptcy Code. The Debtor accurately posits that exceptions to discharge should be construed strictly against the creditor and liberally in favor of the debtor. *See In re Morris*, 223 F.3d 548, 552 (7th Cir. 2000); *Kolodziej v. Reines (In re Reines)*, 142 F.3d 970, 972-73 (7th Cir. 1998); *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir. 1985). He also correctly notes that the purpose of the discharge provided by the Code is to give a "fresh start" to the "honest but unfortunate debtor." *See Vill. of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th Cir. 2002); *Park Nat'l Bank & Trust of Chi. v. Paul (In re Paul)*, 266 B.R. 686, 693 (Bankr. N.D. Ill. 2001).

Although the Debtor here may be unfortunate, the preponderance of the evidence clearly establishes that he is not honest, at least with respect to his conduct in this matter. "[O]nly those debts honestly incurred should be afforded the benefits of a bankruptcy discharge." *Rahrig*, 373 B.R. at 833 (*citing Cohen v. de la Cruz*, 523 U.S. 213, 217 (1998)). "[A] debtor who schemes to cheat another is undeserving of [the] discharge" provided by the Code. *Rice, Heitman & Davis, S.C. v. Sasse (In re Sasse)*, Nos. 09-15128-7, 09-219, 2010 WL 3277970, at *8 (Bankr. W.D. Wis. Aug. 13, 2010). The totality of all of the relevant circumstances in the matter at bar, both before and after the establishment of the debt at issue, presents "a picture of deceptive conduct" by the Debtor, indicating an intent to deceive and defraud 6050 Grant. The Court, therefore, reiterates its determination that the Debtor used false pretenses and made false representations, that he did so with the intent to deceive, that 6050 Grant justifiably relied on such representations, and that 6050 Grant was injured

-11-

as a result thereof.  Accordingly, the Debtor's motion to alter or amend the Opinion is

denied.

## V.  CONCLUSION

For the foregoing reasons, the Court denies the Debtor's motion.

This Opinion constitutes the Court's findings of fact and conclusions of law in

accordance with Federal Rule of Bankruptcy Procedure 7052.  A separate order shall be

entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

**ENTERED:**

DATE: ___10/5/10___                    _____
                                          **John H. Squires**
                                **United States Bankruptcy Judge**

cc:    See attached Service List

## SERVICE LIST

### 6050 Grant, LLC v. Hanson
**Adversary No. 09 A 00447**

Martin J. O'Hara, Esq.
Much Shelist Denenberg Ament &
Rubenstein, P.C.
191 N. Wacker Drive, Suite 1800
Chicago, IL 60606

John M. Brom, Esq.
Robert R. Benjamin, Esq.
Querrey & Harrow, Ltd.
175 W. Jackson Blvd., Suite 1600
Chicago, IL 60604

Gina B. Krol, Esq.
Cohen & Krol
105 W. Madison Street, Suite 1100
Chicago, IL 60602

William T. Neary, United States Trustee
219 S. Dearborn Street
Suite 873
Chicago, IL 60604